IRVIN FRAZIER,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: CV204-047

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Frazier ("Plaintiff" or "Claimant") contests the decision of Administrative Law Judge J. Richard Stables ("the ALJ" or "ALJ Stables") terminating his Social Security disability benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award reinstating his benefits.[1] Defendant asserts that Plaintiff's new evidence is inadmissible and that the Commissioner's decision, supported by substantial evidence, should be affirmed.

On May 14, 1992, an Administrative Law Judge found Plaintiff disabled as of February 13, 1991. That ALJ found that Plaintiff suffered from status post cervical disectomy and fusion at the C3-C7 levels with continuing pain. Plaintiff's condition caused right leg spasms and paresthesia, weakness and numbness in his hands, jumping

---

[1] The Court presumes that the dispute in this case is over benefits accrued from February 1998 until Plaintiff's incarceration in March 2000. Plaintiff is currently incarcerated and serving a twelve to fourteen year sentence for drug possession. (Tr. at 241-42.) According to 42 U.S.C.A. § 402(x)(1)(i), a claimant may not collect monthly benefits if he is currently incarcerated by a publicly funded institution for a criminal offense. See generally Andujar v. Bowen, 802 F.2d 404, 405 (11th Cir. 1986) (holding section 402 (x) constitutional).

movements of his leg muscles causing an inability to keep balance, and limitation in his ability to walk and stand. (Tr. at 16.) After conducting a disability review, the Commissioner determined that plaintiff's disability ceased in February 1998 and terminated his benefits on April 1, 1998. A hearing officer confirmed this decision, stating that Plaintiff could not return to his past relevant work, but could perform work in the national economy.

After a timely request for a hearing and appearance, an Administrative Law Judge found that there had been medical improvement to Plaintiff's condition allowing him to perform light exertional work. The Appeals Council remanded the case, and Plaintiff appeared before ALJ Stables[2] who concluded that Plaintiff's disability ceased on February 1, 1998, and his entitlement to benefits ceased on April 1, 1998. (Tr. at 22.) The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 5.)

Plaintiff, born on August 31, 1956, was forty-one (41) years old when his benefits ceased. (See Tr. at 241.) He has a limited education. (Tr. at 17.) Plaintiff's past relevant work experience consists of employment as a construction worker. (Id.)

## ALJ's FINDINGS

The Social Security Administration (SSA) conducts periodic reviews to determine a claimant's continued eligibility for disability benefits. 20 C.F.R. § 416.994(a) (2005). Evaluating continued disability involves a seven-step process which ensures uniformity,

---

[2] ALJ Stables noted that Plaintiff appeared at the hearing without representation. The ALJ denied Plaintiff's request for a postponement of the hearing to obtain representation. ALJ Stables observed that Plaintiff knew of his right to representation due to his prior participation in an administrative hearing and written notices provided to the Plaintiff. Further, ALJ Stables stated that Plaintiff had sufficient time to obtain representation at the time of his request. (Tr. at 17.)

2

expedience, and efficiency in the determination process. See 20 C.F.R. § 416.994(b)(5) (2005).

The first step determines if the beneficiary has an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404. 20 C.F.R. § 416.994(b)(5)(I) (2005). If step one is not satisfied, step two requires a determination of any medical improvement. 20 C.F.R. § 416.994(b)(5)(ii) (2005). A determination of medical improvement allows the Commissioner to proceed to step three, otherwise, the evaluation proceeds to step four. Id. Step three determines the applicability of the claimant's medical improvements to do work, "i.e. whether or not there has been an increase in the residual functional capacity based on the impairments present at the time of the most favorable medical determination." 20 C.F.R. § 416.994(b)(5)(iii) (2005). If the medical improvement is *not* related to the plaintiff's ability to do work, then the Commissioner shall proceed to step four. Step four considers the application of any exceptions to the medical improvement standard, as stated in sections 414. 669(b)(3) and (b)(4). If the medical improvement is related to the beneficiary's ability to do work, step five requires the Commissioner to determine whether all of the beneficiary's current impairments in combination are severe. 20 C.F.R. § 416.994(b)(5)(iv) & (v) (2005). At step six, if the beneficiary's impairments are severe, the Commissioner assesses his residual functional capacity and, based on all of his current impairments, considers whether the beneficiary can still perform past work. 20 C.F.R. § 416.994(b)(5)(vi) (2005). If he can, the disability will be found to have ended; if he can not, then step seven determines whether the claimant is able to perform other work in the

national economy, considering his residual functional capacity, age, education and past work experience. 20 C.F.R. § 416.994(b)(5)(vii) (2005).

In the instant case, the ALJ followed this process and observed that Plaintiff had not engaged in any substantial gainful activity since his comparison point. (Tr. at 17.) ALJ Stables determined that Plaintiff's impairments, considered separately and in combination, did not meet or equal the listed impairments (Id.) ALJ Stables found that Plaintiff had experienced significant medical improvement related to his ability to perform work activity. Specifically, ALJ Stables noted that Plaintiff "could stand and walk in a relatively normal fashion," and that Plaintiff did not have restrictions on his ability to sit. (Tr. at 19.) The ALJ further noted that no exceptions to the medical improvement standard applied and that the Plaintiff had a severe impairment due to post multilevel cervical discectomy. Although ALJ Stables established that Plaintiff could not return to his past relevant work, the ALJ concluded that Plaintiff could perform light work. Utilizing the Medical-Vocational Guidelines, the ALJ determined that the SSA sufficiently demonstrated the presence of a significant number of jobs existing in the national economy consistent with Plaintiff's residual capacity, age, education and work experience. The ALJ ruled that Plaintiff's disability ended and that his benefits should be discontinued.

## ISSUES PRESENTED

1. Whether Plaintiff is entitled to a remand on the basis of new evidence pursuant to sentence six of 42 U.S.C. § 405(g).

2. Whether the ALJ's finding that Plaintiff's disability ceased as of February 1, 1998, due to medical improvement is supported by substantial evidence in the record and legally correct.

3. Whether the ALJ's conclusion that Plaintiff possess the ability to perform light work is supported by substantial evidence in the record and legally correct.

4

## **STANDARD OF REVIEW**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Cornelius, 936 F.2d at 1145. Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Cornelius, 936 F.2d at 1145.

Substantial evidence must do more than create a suspicion of the existence of the fact to be proved, and the evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210; Martin, 894 F.2d at 1529. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146; Martin, 894 F.2d at 1529.

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION OF AUTHORITY

I. **Plaintiff's Evidence Presented in his Brief and Supplemental Brief Does not Satisfy the Requirements of 42 U.S.C. § 405(g).**

In his Brief, Plaintiff submitted: 1) a bottom bunk pass; 2) records from treating physician; and 3) a sworn affidavit recounting his current back problems. Plaintiff also submitted a document entitled Supplemental Exhibits and Clarification of Facts which provided MRI findings by Dr. Richard Felker conducted in July 2004 and Medical Report of Duty Status slips issued in January and February of 2005. Plaintiff contends that these exhibits demonstrate that the ALJ based his determination on "inaccurate and incomplete information." (Pl.'s Supp. Br. at 2)

In response, Defendant avers that Plaintiff's evidence occurred after the time at issue. Defendant alleges that this evidence does not meet the requirements established by sentence six of 42 U.S.C. § 405(g) because it is not sufficiently material to justify a remand. (Def.'s Br. at 8.)

According to sentence six of 42 U.S.C. § 405(g), the Claimant must demonstrate that "1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

Plaintiff has failed to demonstrate the materiality of this evidence. Plaintiff's exhibits demonstrate the on-going severity of his condition, but do not provide evidence that would change the administrative result. The record accurately supports Plaintiff's continued

6

AO 72A
(Rev. 8/82)

condition as reflected in the ALJ's determination that Plaintiff suffers from a "severe impairment." (Tr. at 20.) Plaintiff's evidence does not demonstrate his inability to perform light work present in the national economy or contradict the finding of medical improvement established by the ALJ.

II. **The ALJ's Determination that Plaintiff Experienced Medical Improvement in His Condition Related to His Ability to Work is Supported by Substantial Evidence.**

Plaintiff generally avers that he is currently disabled and has not experienced significant medical improvement to justify the termination of his benefits. Plaintiff alleges that the ALJ mischaracterized the record in determining the severity of his condition. Plaintiff contends that the ALJ incorrectly discredited his testimony because he lacked objective medical evidence. Plaintiff argues that the ALJ should not have relied solely on Dr. Chondosh's consultative evaluation because he had not provided regular medical care to the plaintiff for many years. Plaintiff asserts that the ALJ erred by ignoring Dr. Flesser's opinion, a physician who evaluated Plaintiff in May 1998. Finally, Plaintiff alleges that the ALJ made factual errors including the determination that Plaintiff did not qualify for bottom bunk preference in prison and that Plaintiff watched basketball games from the upper section of the bleachers.

Defendant avers that the ALJ's determination that Plaintiff has improved medically and in his functional ability is supported by substantial evidence. (Def. Br. at 9-11.) Medical Improvement is defined as any decrease in medical severity, assessed by comparing the "current medical severity of [a beneficiary's] impairment(s) . . . present at the time of the most recent favorable medical decision . . . to the medical severity of that

impairment at that time." 20 C.F.R. 416.994(b)(1)(vii) (2005). A decrease in medical severity is determined through "changes (improvement) in the symptoms, signs, and or laboratory findings associated with [a claimant's] impairments." 20 C.F.R. 416.994(b)(1)(I) (2005); see 20 C.F.R. § 416.928. Benefits will end if: 1) there is any medical improvement; 2) the medical improvement is related to the ability to work; and 3) the beneficiary is currently able to engage in substantial gainful activity. 20 C.F.R. §§ 416.994(a) & (b) (2005).

ALJ Stables concluded that Plaintiff had experienced medical improvement related to his ability to work. The ALJ observed that Plaintiff's cervical surgery improved his movement and activity since his comparison point. In reaching this determination, the ALJ relied heavily on an examination by Dr. Chondosh and testimony by the Plaintiff. The ALJ recognized that Dr. Chondosh personally examined Plaintiff for a consultative examination and found him to have normal coordination, sensation, standing balance, and gait. (Tr. at 19.) ALJ Stables noted that although Plaintiff had continued numbness in his hands and feet, Plaintiff could bend and lift 20 pounds repetitively and could squat and rise with some difficulty. (Id.)

The ALJ observed that Plaintiff's testimony indicated that he participated in a number of regularly scheduled prison activities, including playing pool, cleaning showers, and watching basketball games in the bleachers. (Tr. at 18, 251, 254-256, 263.) ALJ Stables found that Plaintiff studied several hours each day in preparation to take the GED test and walked to classes and dining facilities (Tr. at 18; 249-251, 253). Plaintiff also stated that he was capable of dressing and feeding himself, as well as bending over and touching the floor. (Tr. at 262.) The ALJ noted that the Plaintiff took care of his own

8

personal care while only taking Tylenol for pain relief. (Tr. at 18.) The ALJ found that treatment records from the Federal Correctional Institute were the most recent medical evidence and did not mention any continued neck, shoulder, or arm pain, or numbness. (Tr. at 20.)

The ALJ determined that Dr. Fessler's assessments that Plaintiff could perform sedentary work and that prolonged work could cause hand numbness was not supported by the evidence. As the ALJ observed, Dr. Fessler's opinions were vague, provided little objective findings, and failed to address specific abilities, such as Plaintiff's ability to lift, bend, stoop, and crouch. (Tr. at 19.) Dr. Fessler also failed to define "sedentary work" in his assessment, causing further ambiguity. (Tr. at 19; see Tr. at 117.) Further, the Federal Correctional Institute's treatment records did not support Dr. Fessler's findings. (Tr. at 20.) Despite Dr. Fessler's seemingly contradictory findings, he commented that Plaintiff's improvements were "remarkable," that his sensation was "roughly intact," and that Plaintiff could walk short distances without a cane. (Tr. at 117.) Although the ALJ mentioned Plaintiff's lack of bottom bunk preference and the selection of Plaintiff's bleacher seats, this evidence did not appear to be heavily relied upon by ALJ Stables and does not sufficiently refute the other evidence of record. (See Tr. at 20.) ALJ Stables' determination that Plaintiff experienced medical improvement related to his ability to perform work activity is supported by substantial evidence.

III. **The ALJ's Conclusion That Plaintiff Possess the Ability to Perform Light Work is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ's findings that Plaintiff's activities established his ability to work were unsupported. (Pl.'s Br., at 9.) Plaintiff alleges that the ALJ erred by

9

relying solely on the Medical-Vocational guidelines ("the Grids") in lieu of obtaining testimony by a vocational expert. Plaintiff argues that the prison activities relied upon by the ALJ, are "not easily transferable to the more grueling environment of the work place." (Pl. Br. at 9.) Plaintiff avers that the ALJ abused his discretion by failing to address all the strength demands of sedentary work in determining his residual functional capacity.

Defendant contends that there is substantial evidence to support the ALJ's conclusions that Plaintiff can perform light work. Defendant argues that ALJ Stables established the existence of other work that Plaintiff could perform by appropriately relying on Rule 202.18 of the Grids.

In the instant case, the ALJ determined that Plaintiff could not return to his past relevant work, but could perform full range light exertional work. According to the SSA, light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2005). When making this determination an ALJ must consider the intensity and persistence of his symptoms and the functional impact of those symptoms on his ability to do work in light of all available evidence, including medical history, medical signs, laboratory findings, and testimony from claimant and physicians. 20 C.F.R. §§ 416.929(a) & (c) (2005).

AO 72A
(Rev. 8/82)

ALJ Stables determined that Plaintiff could perform substantially all of the requirements necessary for light exertional work; thus, the ALJ did not need to address Plaintiff's ability to perform sedentary work. ALJ Stables reached his conclusions based on Dr. Chondosh's report and observations, claimant's daily activities, medical evidence of record, and the findings of the State Agency Medical Consultants. (Tr. at 20.) As discussed, ALJ Stables' decision to discount Dr. Fessler's testimony is based on substantial evidence. Plaintiff's testimony also supported a finding that he could perform light work if given the opportunity. (Tr. at 229.)

Generally, after a claimant's residual functioning capacity and ability (or inability) to return to his past relevant work are determined, "the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). Nonetheless, when a claimant is 'unable to perform a full range of work at a given residual level *or* when a claimant has non-exertional impairments that significantly limit basic work skills[,] exclusive reliance on the grids is not appropriate.'" Id. (quoting Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis in original)). If either of these conditions is present, the ALJ is required to consult a vocational expert. Id.

As previously discussed, the ALJ determined that Plaintiff could perform a full range of work at the light work level based on the evidence of record. In addition, the ALJ specifically stated that Plaintiff did not possess any non-exertional limitations. (Tr. at 21.) Thus, ALJ Stables was not required to use a vocational expert and appropriately relied on the Grids to determine that there are a sufficient number of jobs in the national economy

11

which Plaintiff can perform. ALJ Stables' determination that Plaintiff could perform light work and his appropriate use of the grids is supported by substantial evidence.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, the 7th day of September, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)

# United States District Court
## Southern District of Georgia

FRAZIER )

vs ) CASE NUMBER CV204-47

BARNHART ) DIVISION BRUNSWICK

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated 9/6/05 , which is part of the official record of this case.

Date of Mailing: 9/7/05

Date of Certificate ☒ same date, or _____

Scott L. Poff, Clerk

By: _Sherry Taylor_
Sherry Taylor, Deputy Clerk

**Name and Address**

Kenneth Crowder
Irvin Frazier, 29226-018, FCI Jesup, 2680 Highway 301 South, Jesup, GA 31599
Kyle Wallace

☐ Copy placed in Minutes
☐ Copy given to Judge
☒ Copy given to Magistrate